1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOHN PATRICK BLACKMON,

                              Petitioner,

        v.

JEFFREY A. UTTECHT,

                              Respondent.

Case No. C16-1592-RSL-MLP

REPORT AND RECOMMENDATION

## I.    INTRODUCTION AND SUMMARY CONCLUSION

This is a federal habeas action filed under 28 U.S.C. § 2254. Petitioner John Blackmon

seeks to challenge in this action his 2013 Snohomish County Superior Court convictions on

charges of child molestation in the second degree, rape of a child in the third degree, and child

molestation in the third degree. Respondent has filed an answer to Petitioner's amended habeas

petition together with relevant portions of the state court record, and Petitioner has filed a reply

brief in support his amended petition. This Court, having reviewed the submissions of the

parties, concludes that Petitioner's amended petition for writ of habeas corpus should be denied

and this action should be dismissed with prejudice.

REPORT AND RECOMMENDATION
PAGE - 1

## II.     BACKGROUND

### A.     Factual History

The Washington Court of Appeals, on direct appeal, summarized the facts underlying Petitioner's convictions as follows:

> Although the facts were disputed at trial, the evidence shows the following. In 2007, John Patrick Blackmon lived in a three-bedroom home with his wife, Jenifer Blackmon, and their three children, IB, ZB, and BB.
>
> Blackmon's oldest daughter, IB, reported that sometime before August 2008, he began sexually abusing her when she was 13 years old. Blackmon put his hand down IB's shorts and began rubbing her after the family had gone to bed.
>
> IB testified that sometimes the abuse would occur three to four times per week. She said he performed oral sex on her, placed his penis between her butt cheeks, exposed her to pornography, had her stimulate him, and asked to shave her pubic hair. IB testified that this abuse happened in Blackmon's bedroom while the two watched movies. He locked the door to prevent the other children from coming into the room. Blackmon covered the gap between the door frame and wall with a pillow or a towel to prevent anyone from peering into the room. IB testified the abuse happened when her mother was at work or asleep. On occasion, IB initiated the sexual contact because it made her feel closer to Blackmon.
>
> The abuse stopped at the start of IB's sophomore year of high school. She told Blackmon she wanted a normal relationship with him without the sexual activity. He agreed, but their relationship became contentious. For example, Blackmon revoked her privileges and threatened to stop her from playing basketball when she violated a rule against texting friends on the "no contact" list. Report of Proceedings (RP) (July 5, 2013) at 516-17. IB described their relationship as "[v]ery rocky" and "argumentative." RP (July 5, 2013) at 392.
>
> Soon afterwards, IB disclosed the abuse to her friend, MF. MF reported the abuse to her mother, who then reported it to her husband, Mark Froland, an Edmonds police officer. Officer Froland talked to IB and reported the abuse allegation to Marysville Police Detective Cori Shackleton.
>
> Blackmon was arrested and charged with various counts of molestation and child rape involving IB. Two trials resulted in mistrials when the juries deadlocked. The State refiled charges against Blackmon by fifth amended information with two counts of second degree child molestation, one count of third degree rape of a child, and two counts of third degree child molestation. The jury convicted Blackmon as charged.

REPORT AND RECOMMENDATION
PAGE - 2

1

2          At sentencing, the trial court imposed 116 months on each count of second

3     degree child molestation (counts 1 and 2), 60 months on one count of third degree
      rape of a child (count 3), and 60 months on each count of third degree child

4     molestation (counts 4 and 5). Counts 1 through 4 ran concurrent to each other and
      consecutive on count 5, resulting in a total sentence of 176 months. The court also

5     ordered 36 months of community custody for each of the five counts. It indicated,
      "The combined term of community custody and confinement shall not exceed the
      statutory maximum."

6     (Dkt. # 38, Ex. 2 at 2-3.)

7     **B.      Procedural History**

8          Petitioner appealed his convictions and sentence to the Washington Court of Appeals.

9     (*See id.*, Exs. 2-8.) On December 22, 2014, the Court of Appeals issued an unpublished opinion

10    affirming Petitioner's convictions but remanding the case for resentencing because the term of

11    confinement imposed by the trial court, when combined with the mandated term of community

12    custody, exceeded the statutory maximum for Petitioner's crimes. (*Id.*, Ex. 2 at 22-23.) Petitioner

13    thereafter moved for reconsideration of the Court of Appeals' decision, and the motion was

14    denied on January 27, 2015. (*Id.*, Exs. 9-10.)

15         Petitioner next sought review in the Washington Supreme Court. Petitioner presented the

16    following eight issues to the Supreme Court for review:

17            1.      Court of Appeals erred upholding trial court's allowing the non-party to
18                    enter stipulations of "probable cause" to bypass court's obligations
                      established in the law.

19            2.      Court of Appeals erred upholding trial court's allowing evidence admitted
                      in violation of constitutional rights and privilege to remain silent at
20                    subsequent third trial proceeding, under guise of ER-106 rule.

21            3.      Court of Appeals erred upholding admission officer's opinion testimonial
                      comments on guilt before the jury.

22
23            4.      Court of Appeals erred upholding trial court's denial of mistrial motion

REPORT AND RECOMMENDATION
PAGE - 3

after victim and prosecutor chose to violate a motion in limine ruling excluding mention of the prior trials before the third jury.

5.      Court of Appeals erred upholding prosecutor's acts of misconduct, allowing Mr. Blackmon prejudiced to right of a fair trial proceeding.

6.      Court of Appeals erred upholding trial court's allowing the "crime victim advocate" in jury deliberation, giving input to the jury on the verdict it rendered.

7.      Court of Appeals erred upholding trial court's issuing an exceptional sentence under the "free crime aggravator" for Mr. Blackmon's first criminal convict.

8.      Court of Appeals erred upholding verdict with biased jury member present, when record established a lie during this vore [sic] dire proceeding by jurior [sic] to remain in the selection jury pool.

(*Id.*, Ex. 11 at 1-2.) The Washington Supreme Court denied review without comment on September 2, 2015, and the Court of Appeals issued its mandate terminating direct review on October 9, 2015. (*Id.*, Exs. 12, 13.)

On October 17, 2016, Petitioner, through counsel, filed a personal restraint petition in the Washington Court of Appeals. (*Id.*, Ex. 14.) The Acting Chief Judge of the Court of Appeals issued an order dismissing the petition on January 17, 2018. (*Id.*, Ex. 21.) Petitioner thereafter sought review in the Washington Supreme Court. (*Id.*, Ex. 22.) Petitioner presented the following two issues to the Supreme Court for review: (1) Petitioner's trial counsel denied him his constitutional right to testify; and (2) Petitioner is entitled to a new trial on the basis of newly discovered evidence. (*Id.*, Ex. 22 at 3-4.) On July 17, 2018, the Commissioner of the Washington Supreme Court issued a ruling denying discretionary review. (*Id.*, Ex. 25.) Petitioner thereafter filed a motion to modify the Commissioner's ruling, and that motion was denied on October 3, 2018. (*Id.*, Exs. 26, 28.) Petitioner now seeks federal habeas review of his convictions.

REPORT AND RECOMMENDATION
PAGE - 4

### III.    GROUNDS FOR RELIEF

Petitioner identifies the following three grounds for relief in his amended petition for writ of habeas corpus filed by his appointed counsel in December 2018:

GROUND ONE: Mr. Blackmon's trial counsel and the trial court deprived him of his constitutional right to testify when his attorney rested her case without first obtaining a knowing, intelligent and voluntary waiver from Mr. Blackmon.

GROUND TWO: Evidence presented in Mr. Blackmon's personal restraint petition demonstrates that he is actually innocent and his conviction violates due process.

GROUND THREE: References by the prosecutor and the key state witness to previous trials violated Mr. Blackmon's Fifth Amendment rights and entitle him to habeas relief.

(Dkt. # 32 at 27, 34, 36.)

### IV.    DISCUSSION

Respondent asserts in his answer to the amended petition that Petitioner arguably exhausted his first ground for relief, but that he failed to properly exhaust his second and third grounds for relief. (Dkt. # 37 at 6-7.) Respondent argues that Petitioner's unexhausted claims are procedurally barred, and that Petitioner is not entitled to relief with respect to his single exhausted claim. (*See id*. at 5-7, 11-14.) Petitioner, in his response to Respondent's answer, asserts that it is immaterial whether he exhausted his second ground for relief, that he properly exhausted his third ground for relief, and that he is entitled to relief on all three of his asserted grounds. (*See* Dkt. # 40.)

#### A.    Exhaustion/Procedural Default

A state prisoner is required to exhaust all available state court remedies before seeking a federal writ of habeas corpus. 28 U.S.C. § 2254(b)(1). The exhaustion requirement is a matter of comity, intended to afford the state courts "an initial opportunity to pass upon and correct alleged

REPORT AND RECOMMENDATION
PAGE - 5

1   violations of its prisoners' federal rights." *Picard v. Connor*, 404 U.S. 270, 275 (1971) (internal

2   quotation marks and citations omitted). In order to provide the state courts with the requisite

3   "opportunity" to consider his federal claims, a prisoner must "fairly present" his claims to each

4   appropriate state court for review, including a state supreme court with powers of discretionary

5   review. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan v. Henry*, 513 U.S. 364, 365

6   (1995) and *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)).

7        "In order to 'fairly present' an issue to a state court, a petitioner must 'present the

8   substance of his claim to the state courts, including a reference to a federal constitutional

9   guarantee and a statement of facts that entitle the petitioner to relief.'" *Gulbrandson v. Ryan*, 738

10   F.3d 976, 992 (9th Cir. 2013) (quoting *Scott v. Schriro*, 567 F.3d 573, 582 (9th Cir. 2009)). *See*

11   *also Picard*, 404 U.S. at 275-78 (1971) (proper exhaustion requires a petitioner to have "fairly

12   presented" to the state courts the exact federal claim he raises on habeas by describing the

13   operative facts and federal legal theory on which the claim is based). Claims that are based on

14   the same facts must be separately exhausted if they are supported by distinct constitutional

15   theories. *See Gray v. Netherland*, 518 U.S. 152, 162–63 (1996).

16        When a petitioner fails to exhaust his state court remedies and the court to which

17   petitioner would be required to present his claims in order to satisfy the exhaustion requirement

18   would now find the claims to be procedurally barred, there is a procedural default for purposes of

19   federal habeas review. *See Coleman v. Thompson*, 501 U.S. 722, 735 n. 1 (1991). When a state

20   prisoner defaults on his federal claims in state court, pursuant to an independent and adequate

21   state procedural rule, federal habeas review of the claims is barred unless the prisoner can

22   demonstrate cause for the default and actual prejudice as a result of the alleged violation of

23

REPORT AND RECOMMENDATION
PAGE - 6

1    federal law, or can demonstrate that failure to consider the claims will result in a fundamental

2    miscarriage of justice. *Id*. at 750.

3         To satisfy the "cause" prong of the cause and prejudice standard, a petitioner must show

4    that some objective factor external to the defense prevented him from complying with the state's

5    procedural rule. *Id*. at 753 (citing *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). To show

6    "prejudice," a petitioner "must shoulder the burden of showing, not merely that the errors at his

7    trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial

8    disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v.*

9    *Frady*, 456 U.S. 152, 170 (1982) (emphasis in original). Only in an "extraordinary case" may the

10   habeas court grant the writ without a showing of cause or prejudice to correct a "fundamental

11   miscarriage of justice" where a constitutional violation has resulted in the conviction of a

12   defendant who is actually innocent. *Murray*, 477 U.S. at 495-96.

13        1.    *Ground Two: Actual Innocence*

14        Petitioner asserts in his second ground for federal habeas relief that evidence presented in

15   his state court collateral proceedings demonstrates that he is actually innocent and his conviction

16   therefore violates due process. (Dkt. # 32 at 34.) The record makes clear that Petitioner never

17   presented any actual innocence claim nor any due process claim to the state courts. Instead,

18   Petitioner argued in his state court proceedings that he was entitled to a new trial based on newly

19   discovered evidence. Specifically, Petitioner argued in his personal restraint petition that new

20   evidence in the form of a receipt documenting the purchase date of a new bed upon which the

21   victim testified that at least one of the incidents of abuse occurred, and post-trial statements made

22   by the victim regarding the abuse, entitled him to a new trial. (Dkt. # 38, Ex. 14 at 30-33.) In his

23   motion for discretionary review to the Washington Supreme Court, Petitioner confined his newly

REPORT AND RECOMMENDATION
PAGE - 7

1    discovered evidence claim to the victim's post-trial public statements. (*Id.*, Ex. 22 at 12-14.) The

2    Supreme Court nonetheless addressed Petitioner's newly discovered evidence claim in relation to

3    the receipt for the new bed and rejected the claim upon concluding that the receipt did not help

4    Petitioner's defense. (*Id.*, Ex. 25 at 3.)

5        Because Petitioner did not present any actual innocence or due process claim to the state

6    courts in relation to the alleged newly discovered evidence, Petitioner's actual innocence claim

7    has not been properly exhausted. Petitioner argues that if he can show actual innocence, whether

8    he exhausted his claim in state court is immaterial. It is not entirely clear from Petitioner's

9    briefing whether he intends to argue that his actual innocence provides a gateway for

10   consideration of an otherwise barred constitutional claim, or whether he intends to present a

11   freestanding claim of actual innocence.[1] The Court will briefly address Petitioner's actual

12   innocence claim in both contexts.

13           i.    Gateway Actual Innocence

14       The miscarriage of justice exception, if established, functions as a "gateway" permitting a

15   habeas petitioner to obtain review of claims of constitutional error that would otherwise be

16   procedurally barred. *Carriger v. Stewart*, 132 F.3d 463 (9th Cir. 1997). The Supreme Court has

17   cautioned that tenable gateway actual innocence claims are rare. *McQuiggin v. Perkins*, 569 U.S.

18   383, 386 (2013). "[A] petitioner does not meet the threshold requirement unless he persuades the

19   district court that, in light of the new evidence, no juror, acting reasonably, would have voted to

20   find him guilty beyond a reasonable doubt." *Id.* (quoting *Schlup v. Delo*, 513 U.S. 298, 329

21   _____

22   [1] Petitioner appears to accept without challenge Respondent's argument that he would at this
     point be barred under RCW 10.73.010 from returning to the state courts to exhaust any
     unexhausted claims because more than one year has now passed since his convictions became
23   final for purposes of state law.

REPORT AND RECOMMENDATION
PAGE - 8

(1995)); *see also House v. Bell*, 547 U.S. 518, 538 (2006) (emphasizing that the *Schlup* standard is demanding and rarely met). In order to make a credible claim of actual innocence, a petitioner must "support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup*, 513 U.S. at 324.

Petitioner contends that the bed receipt which he presented to the state courts on collateral review establishes that he is actually innocent because it shows that the bed was purchased after the date on which the victim testified that crimes occurred on that bed. (Dkt. # 32 at 34.) Petitioner overstates the significance of the receipt.

The victim testified at Petitioner's third trial as to multiple incidents of abuse. As to one of those incidents, when asked by the prosecutor if she could remember how old she was when the incident occurred, she responded "It was my parents' new bed, and I remember being light in the room . . . ." (Dkt. # 38, Ex. 32 at 352.) The victim testified that this was the first time she ever touched Petitioner. (*Id*., Ex. 32 at 348-352.) Prior to this testimony, the victim testified that an incident where Petitioner had put his mouth on her vagina had occurred at a time when her parents had their "old bed." (*Id*., Ex. 32 at 334.) Shortly after the victim made reference to the "new bed," she testified with respect to another touching incident which by her description occurred later in time[2], and she explained, "Like, I was in my bedroom and I remember it being my parents' old bed, because I remember dad, like, grabbing the headboard, like, the -- like the, like, railing." (*Id*., Ex. 32 at 353.) Shortly thereafter, the victim confirmed that this incident

---

[2] The victim testified that this incident involved touching Petitioner's penis. (Dkt. # 38, Ex. 32 at 353.)

REPORT AND RECOMMENDATION
PAGE - 9

occurred on her parents' old bed. (*Id.*, Ex. 32 at 355.) There was no further mention during the victim's testimony of abuse having occurred on the new bed. (*See id.*, Exs. 32, 33.)

Petitioner argues here that a "vital issue" at trial was the date on which the alleged improper sexual contact occurred, and that if the alleged misconduct could not have occurred on the dates the victim alleged, it made her allegations factually impossible and cast doubt on the veracity of her testimony in its entirety. (*See* Dkt. # 32 at 35.) However, the receipt, at most, contradicts one very small portion of the victim's testimony, testimony which the victim effectively corrected a short time after it was offered. It is noteworthy that Petitioner's counsel chose not to cross-examine the victim on this point even though the record makes clear that Petitioner possessed information at the time of his third trial regarding the date on which the new bed was purchased (*see* dkt. # 38, Ex. 31 at 956), even if he did not possess the actual receipt. This suggests that Petitioner's counsel deemed any challenge to the victim's single reference to the new bed to be of limited value in bolstering Petitioner's defense.

Petitioner fails to satisfy the very demanding *Schlup* standard as he makes no showing whatsoever that no reasonable juror would have convicted him had the receipt for the new bed been offered as evidence at trial. Petitioner's gateway actual innocence claim therefore fails.

ii.    Freestanding Actual Innocence

To the extent Petitioner intends to assert a freestanding claim of actual innocence rather than a gateway claim of actual innocence, his claim also fails. The Court first notes that neither the United States Supreme Court nor the Ninth Circuit has held that a freestanding claim of actual innocence is cognizable on federal habeas review, though both courts have assumed without deciding that such a claim is viable. *See McQuiggin*, 569 U.S. at 392 ("We have not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of

REPORT AND RECOMMENDATION
PAGE - 10

actual innocence."); *Herrera v. Collins*, 506 U.S. 390, 417 (1993) (assuming without deciding that the execution of an innocent defendant would be unconstitutional); *Jones v. Taylor*, 763 F.3d 1242, 1246 (9th Cir. 2014) ("We have not resolved whether a freestanding actual innocence claim is cognizable in a federal habeas corpus proceeding in the non-capital context, although we have assumed that such a claim is viable.")

Assuming that a freestanding claim of actual innocence in a non-capital case is in fact cognizable on federal habeas review, "the threshold showing for such an assumed right would necessarily be extraordinarily high." *Herrera*, 506 U.S. at 417. The Ninth Circuit has held that, at a minimum, a petitioner "must go beyond demonstrating doubt about his guilt, and must affirmatively prove that he is probably innocent." *Carriger*, 132 F.3d at 476 (citing *Herrera*, 506 U.S. at 442-44 (Blackmun. J., dissenting)). As Petitioner has not met the less onerous standard for establishing a gateway actual innocence claim, he clearly cannot meet the more rigorous standard for establishing a freestanding claim of actual innocence. The bed receipt in no way affirmatively proves that Petitioner is probably innocent of any of the crimes of which he was convicted. Thus, any intended freestanding claim of actual innocence must be denied.

    2.    *Ground Three:  Fifth Amendment Violation*

Petitioner asserts in his third ground for federal habeas relief that references by the prosecutor and a key state witness to previous trials violated his Fifth Amendment rights. (Dkt. # 32 at 36.) Petitioner's third ground for relief comprises two claims presented to the state courts on direct appeal. One of the issues presented to the Washington Court of Appeals on direct appeal of Petitioner's conviction was that the trial court erred in denying his motion for mistrial after prosecution witness IB violated a motion in limine excluding references to prior trials. (*See* Dkt. # 38, Ex. 3 at 30.) Petitioner argued in support of that claim that the testimony was improper

REPORT AND RECOMMENDATION
PAGE - 11

1    and prejudicial because the jury in his case, upon learning that there had been prior trials, might

2    have speculated that Petitioner exercised his right not to testify at the current trial because he had

3    been convicted after testifying at former trials. (*Id.*, Ex. 3 at 31.) Petitioner claims that this would

4    have improperly allowed the jury to draw adverse inferences from the exercise of his right to

5    remain silent at trial. (*Id.*) In a separate claim, Petitioner argued that the prosecutor committed

6    misconduct in various ways, including by referring to a document as a "trial transcript," which

7    Petitioner argued was prejudicial for the reasons cited in the preceding claim.  (*Id.*, Ex. 3 at 32,

8    36.)

9        The Court of Appeals rejected these claims. As to Petitioner's claim regarding IB's

10    violation of the motion in limine, the Court concluded that the violation was de minimis and that

11    the trial court properly denied the motion for mistrial. (*Id.*, Ex. 2 at 12.) The Court explained that

12    "[c]onsidered in the context of numerous references to prior 'hearings' and 'proceedings,' the

13    jury was well aware that proceedings occurred before it was empaneled. IB's isolated reference

14    to a trial disclosed nothing about the substance or result of any prior proceedings." (*Id.*) The

15    Court of Appeals further noted that the alleged error could have been easily cured by a

16    cautionary instruction which Petitioner did not request. (*Id.*)

17        As to Petitioner's prosecutorial misconduct claim, the Court of Appeals concluded that

18    Petitioner had not established any prejudice resulting from the prosecutor's isolated reference to

19    a "trial" transcript, noting that the prosecutor immediately corrected the reference and Petitioner

20    did not interpose any objection. (*Id.*, Ex. 2 at 15-16.)

21        In his petition for review to the Washington Supreme Court, petitioner claimed that the

22    Court of Appeals erred in upholding the trial court's denial of his motion for mistrial, arguing

23    generally that the alleged error denied him his "constitutional right to a fair and impartial

REPORT AND RECOMMENDATION
PAGE - 12

verdict." (*Id.*, Ex. 11 at 11.) Petitioner also argued that the prosecutor's reference to a "trial transcript" constituted prosecutorial misconduct and denied him a fair trial. (*Id.*, Ex. 11 at 12-13.) Petitioner at no point presented any claim to the Washington Supreme Court that the references to the prior trial by the state's witness and the prosecutor violated his Fifth Amendment rights.

That the facts Petitioner alleges in support of his Fifth Amendment claim were before the state courts in the context of Petitioner's allegations of trial court error and prosecutorial misconduct is not sufficient to satisfy the exhaustion requirement. Because the record makes clear that Petitioner did not present his Fifth Amendment claim to the Washington Supreme Court for consideration, the claim has not been properly exhausted. And, as explained above, any unexhausted claims are now procedurally defaulted because Petitioner would be time barred from returning to the state courts to present any unexhausted claims.

Petitioner makes no effort to show cause or prejudice for his default of his third ground for relief, nor does he make any credible showing that failure to consider the defaulted claim will result in a fundamental miscarriage of justice. Petitioner therefore fails to demonstrate that his unexhausted claim is eligible for federal habeas review. Accordingly, this Court recommends that Petitioner's amended petition for writ of habeas corpus be denied with respect to his third ground for relief.

**B.    Section 2254 Merits Review**

Federal habeas corpus relief is available only to a person "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A habeas corpus petition may be granted with respect to any claim adjudicated on the merits in state court only if the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, or if the decision was based on an

REPORT AND RECOMMENDATION
PAGE - 13

1    unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d).

2    Under the "contrary to" clause, a federal habeas court may grant the writ only if the state court

3    arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or if

4    the state court decides a case differently than the Supreme Court has on a set of materially

5    indistinguishable facts. *See Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). Under the

6    "unreasonable application" clause, a federal habeas court may grant the writ only if the state

7    court identifies the correct governing legal principle from the Supreme Court's decisions, but

8    unreasonably applies that principle to the facts of the prisoner's case. *See id*. at 407-09.

9        The Supreme Court has made clear that a state court's decision may be overturned only if

10    the application is "objectively unreasonable." *Lockyer v. Andrade*, 538 U.S. 63, 69 (2003). The

11    Supreme Court has also explained that "[a] state court's determination that a claim lacks merit

12    precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness

13    of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 88 (2011) (citing *Yarborough*

14    *v. Alvarado*, 541 U.S. 652, 664 (2004)).

15        Clearly established federal law means "the governing legal principle or principles set

16    forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer*, 538 U.S.

17    at 71-72. "If no Supreme Court precedent creates clearly established federal law relating to the

18    legal issue the habeas petitioner raised in state court, the state court's decision cannot be contrary

19    to or an unreasonable application of clearly established federal law." *Brewer v. Hall*, 378 F.3d

20    952, 955 (9th Cir. 2004) (citing *Dows v. Wood*, 211 F.3d 480, 485-86 (9th Cir. 2000)).

21        In considering a habeas petition, this Court's review "is limited to the record that was

22    before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S.

23    170, 181-82 (2011). If a habeas petitioner challenges the determination of a factual issue by a

REPORT AND RECOMMENDATION

PAGE - 14

1    state court, such determination shall be presumed correct, and the applicant has the burden of

2    rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C.

3    § 2254(e)(1).

4        *1.    Ground One: Right to Testify*

5        Petitioner asserts in his first ground for federal habeas relief that his trial counsel and the

6    trial court deprived him of his constitutional right to testify when they failed to communicate his

7    right to testify and to ensure that any waiver of that right was knowing, intelligent, and

8    voluntary. (Dkt. # 32 at 27-33.) Respondent argues that Petitioner is not entitled to relief on this

9    claim because the United States Supreme Court has not clearly established that the trial court or

10   trial counsel are required to engage in an on the record colloquy to ensure that a criminal

11   defendant understands his choice not to testify before he is able to forfeit that right. (Dkt. # 37 at

12   11-14.)

13       The United States Supreme Court has recognized that a criminal defendant has a

14   constitutional right to testify in his own defense. *Rock v. Arkansas*, 483 U.S. 44, 49-52 (1987).

15   The Supreme Court has also recognized "that the accused has the ultimate authority to make

16   certain fundamental decisions regarding the case, as to whether to plead guilty, waive a jury,

17   testify in his or her own behalf, or take an appeal." *Jones v. Barnes*, 463 U.S. 745, 751 (1983)

18   (citations omitted). However, the Supreme Court has never held that a court has an affirmative

19   duty to obtain a waiver of the right to testify.

20       The Ninth Circuit, which has a more robust body of case law surrounding this issue, has

21   recognized that a defendant's waiver of his right to testify must be knowing and intentional, but

22   has held that such a waiver need not be explicit. *United States v. Pino-Noriega*, 189 F.3d 1089,

23   1094 (9th Cir. 1999) (citing *United States v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993)). Rather,

REPORT AND RECOMMENDATION
PAGE - 15

1   "waiver of the right to testify may be inferred from the defendant's conduct and is presumed

2   from the defendant's failure to testify or notify the court of his desire to do so." *Id.* at 1095

3   (citing *Joelson*, 7 F.3d at 177). A defendant is also "presumed to assent to his attorney's tactical

4   decision not to have him testify." *Id.* "When a defendant remains 'silent in the face of his

5   attorney's decision not to call him as a witness,' he waives the right to testify." *Id.* (citing *United

6   States v. Nohara*, 3 F.3d 1239, 1244 (9th Cir. 1993)).

7          The Washington Supreme Court, in Petitioner's personal restraint proceedings, rejected

8   his claim that he was denied his constitutional right to testify in his own defense. The Supreme

9   Court explained its conclusion as follows:

10          A defendant has a fundamental constitutional right to testify on his or her
    own behalf, which may not be abrogated by trial counsel or the court. *Rock v.
11   Arkansas*, 483 U.S. 44, 107 S. Ct. 2704, 97 L. Ed. 2d 37 (1987); *State v. Thomas*,
    128 Wn.2d 553, 558, 910 P.2d 475 (1996). The defendant has sole authority to
12   decide whether to testify. *State v. Robinson*, 138 Wn.2d 753, 758, 982 P.2d 590
    (1999). Any waiver of the right to testify must be knowing, voluntary, and
13   intelligent. *Id*. But there is no requirement that the trial court obtain an on-the-
    record waiver by the defendant. *Id*. at 758-59.
14
           In his declaration, Mr. Blackmon contends that his attorney "blindsided"
15   him by immediately resting after the State rested its case, providing no time for
    discussion of whether he wished to testify. He states that he repeatedly told
16   counsel that he would like to testify and that he would decide after the State
    rested. After his trial concluded, Mr. Blackmon moved for a new trial based on
17   the denial of his right to testify. The trial court denied the request, noting that Mr.
    Blackmon had chosen to testify at his first trial, had chosen not to testify at his
18   second trial, and displayed no physical reaction at his third trial when defense
    counsel rested. The trial judge observed Mr. Blackmon and saw no indication that
19   he was surprised by defense counsel resting without calling him to testify.

20          A petitioner must make more than bald assertions and conclusory
    allegations to merit a reference hearing. *In re Pers. Restraint of Rice*, 118 Wn.2d
21   876, 886, 828 P.2d 1086 (1992). Rather, the petitioner must state with
    particularity facts that, if proven, would entitle him to relief. *Id*. Here, Mr.
22   Blackmon presents nothing more than what he presented to the trial court in his
    motion for a new trial. There, the court made findings and rejected Mr.
23   Blackmon's claim based on the record and on direct observations of Mr.

REPORT AND RECOMMENDATION
PAGE - 16

1    Blackmon at trial. Mr. Blackmon presents no additional, competent, admissible
2    evidence that would entitle him to relief. The acting chief judge properly rejected
     this claim as frivolous because it lacked any basis in fact.

3    (Dkt. # 38, Ex. 25.)

4    Petitioner rejects the suggestion that he is asking this Court to impose a new rule

5    requiring an on the record colloquy before a waiver of the right to testify may be deemed valid.

6    (*See* Dkt. # 40 and 3-4.) He insists instead that he has merely identified clearly established

7    Supreme Court precedent dictating that a waiver of the right to testify must be knowing,

8    intelligent, and voluntary, and has argued that, in his case, the waiver was not. (*See id.*)

9    Petitioner's argument in his amended petition in support of his first ground for relief is

10   convoluted and somewhat difficult to follow, and it is therefore not surprising that Respondent

11   could have misinterpreted his claim. The Court accepts Petitioner's representation, made in his

12   response to Respondent's answer, that he simply intends to argue that the Washington Supreme

13   Court unreasonably determined that he knowingly, intelligently and voluntarily waived his right

14   to testify. (*See id.* at 4.)

15   Petitioner maintains that all the available evidence points to the conclusion that he did not

16   make a knowing, intelligent, and voluntary waiver of his right to testify, and he cites to his own

17   declaration in which he states that he informed his trial counsel of his desire and intention to

18   testify, and that counsel blindsided him by resting the defense case without providing him the

19   opportunity to testify. (*See id.*, citing Dkt. # 32, Ex. 5 at 3-4.) Petitioner suggests that this

20   declaration demonstrates that he did not understand what his options were in regards to testifying

21   at his third trial and provides "incredibly probative evidence that he did not properly waive his

22   rights." (*Id.*)

23

REPORT AND RECOMMENDATION
PAGE - 17

Petitioner's declaration actually undermines any claim that he did not understand he had a right to testify as he indicates therein that he had almost daily conversations with his counsel about whether he would testify and that he "refused ANY waiver of [H]is Right to testify." (Dkt. # 32, Ex. 5 at 4-5.) And, though Petitioner claims in his declaration that counsel "robbed" him of his right to testify, the fact remains that Petitioner made no effort to assert that right at trial. It was not unreasonable for the state courts, on collateral review, to view Petitioner's declaration in the context of the entire record, or to conclude, based on that record, that Petitioner understood his rights and had waived them. Petitioner suggests here that the state courts placed an undue burden on him to produce evidence in addition to his self-serving declaration to support his claim that he was deprived of his constitutional right to testify. However, it should not have been unduly burdensome for Petitioner, who was represented by counsel in his personal restraint proceedings, to produce supporting evidence if any such evidence existed.

Petitioner has not demonstrated that the Washington Supreme Court's decision in relation to his claim that he was denied his right to testify was contrary to, or constituted an unreasonable application of clearly established Supreme Court precedent, nor has he demonstrated that the decision was based on an unreasonable determination of the facts. Petitioner's first ground for federal habeas relief should therefore be denied.

## C.    Certificate of Appealability

A petitioner seeking post-conviction relief under § 2254 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability from a district or circuit judge. A certificate of appealability may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(3). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the

REPORT AND RECOMMENDATION
PAGE - 18

district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Under this standard, this Court concludes that Petitioner is not entitled to a certificate of appealability with respect to any of the claims asserted in his amended petition.

## V.     CONCLUSION

Based on the foregoing, this Court recommends that Petitioner's amended petition for writ of habeas corpus be denied and that this action be dismissed with prejudice. This Court also recommends that a certificate of appealability be denied with respect to all claims asserted in this federal habeas action. A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than **twenty-one (21)** days after the filing of this Report and Recommendation. Objections, and any response, shall not exceed three pages. Failure to file objections within the specified time may affect your right to appeal. Objections should be noted for consideration on the District Judge's motion calendar **fourteen (14)** days after they are served and filed. Responses to objections, if any, shall be filed no later than **fourteen (14)** days after service and filing of objections. If no timely objections are filed, the matter will be ready for consideration by the District Judge on the date that objections were due.

DATED this 8th day of May, 2019.

MICHELLE L. PETERSON
United States Magistrate Judge

REPORT AND RECOMMENDATION
PAGE - 19